**MANGUM v. TURNER.**

**No. 5187.**

Court of Civil Appeals of Texas. Amarillo.

July 1, 1940.

Rehearing Denied Sept. 9, 1940.

J. D. Thomas, of Farwell, and Ernest Tibbets, of Plainview, for appellant.

Aldridge & Aldridge, of Farwell, for appellee.

FOLLEY, Justice.

This suit was instituted by the appellee, O. G. Turner, against Carrie Lilliard, Carl Mangum and the Campbell Ice Cream Company seeking recovery against Carrie Lilliard and Carl Mangum for house rent alleged to have been due upon a business building belonging to the appellee in the town of Friona, Parmer County, Texas, and seeking foreclosure of an alleged landlord's lien upon certain property in the building against all the parties, such property including a soda fountain and certain other store fixtures. Carl Mangum answered alleging that he had purchased the personal property from Turner; that he had sold it to Carrie Lilliard; that he had received from her a chattel mortgage upon such property to secure the unpaid

purchase price; and asked for a judgment for his debt against Carrie Lilliard and for foreclosure of his lien against her and all other parties to the suit.

Upon a trial before the court without a jury the appellee Turner recovered judgment against Carl Mangum and Carrie Lilliard for the sum of $137.50 representing rent on the building from August 1, 1938, to March 1, 1939, but no foreclosure of the alleged landlord's lien was decreed in his favor. This recovery was allowed as against Mangum upon the theory that he was a partner with Mrs. Lilliard. The court further adjudged and decreed that Carl Mangum recover from Carrie Lilliard the sum of $309.37 and decreed foreclosure of his chattel mortgage lien. From this judgment only the appellant, Carl Mangum, has appealed to this court.

The evidence reveals that about May 1, 1938, Mrs. Lilliard rented appellee's building in Friona for the purpose of conducting a confectionery business. The appellee then owned the fixtures in the building. Mrs. Lilliard, Mangum and Turner entered into a parol agreement whereby Mrs. Lilliard was to purchase these fixtures for $250 with money furnished and to be furnished by Mangum. On May 28, 1938, Turner executed a bill of sale conveying the fixtures to Mangum for the recited consideration of $250. Mangum, in turn, sold the property to Mrs. Lilliard, retaining a chattel mortgage thereon to secure her note to him for $250. Thereupon Mrs. Lilliard began a confectionery business in appellee's building.

The only issue in this case is whether or not there was sufficient testimony to support the court's finding that a partnership existed between the appellant and Mrs. Lilliard, upon which finding the judgment against Mangum was based. It is not contended that the appellant made any rental contract with the appellee or that he was liable for the rent unless he was bound as a partner in the rental agreement made between Mrs. Lilliard and the appellee.

The appellant denied both by verified pleadings and by his testimony that any partnership existed between him and Mrs. Lilliard. The only testimony in support of the existence of the partnership comes from Mrs. Lilliard. Her testimony on direct examination in regard to the matter was in part as follows: "I started cleaning up and getting ready for business. I told him that if I had enough money to put in patent medicines and sundries that I could make a whole lot more money out of it. Carl said that he thought so too, and that if it suited me we would just go in partners on it and he would furnish the money to run it, and I would run it and we would be partners in it. I agreed to this and then he let me have about $150.00 at one time to buy some more merchandise for the store. As to what the terms of our partnership were, well Carl was to furnish the money and I was to run it, if we got a chance to sell it, we were going to sell it and Carl was going to get back what he put in it, and we were to divide what was left. If we didn't sell it, I was going to do the running of it and we were going to split what we made. I certainly did not get any salary. It was a partnership and I was not supposed to draw a salary. We had a chance a little bit later to sell it for $400.00 profit, and I wanted to sell it but Carl said that we could make more money by keeping it and we didn't sell it. I later had a chance to sell it and pay everything, that is pay off the purchase price of the fixtures and what else he owed, but Carl wouldn't sign a release of the mortgage that he had unless I paid him all that he claimed I owed him. I had drawn on him for $300.00 in addition to the original $250.00. As to why I gave him a mortgage if it was a partnership. In the first place he said that he was a married man and he didn't want his wife to know it. He then said that if anything happened to him his heirs could tell what he had in it. He also had to sell the note to the bank to get money to keep on operating the business."

On cross-examination she further testified that she gave Mangum the note and mortgage because the latter stated that he was a married man and that it would look better for her to do so; that if something happened to him the note would evidence the amount he had in the business; that when the business was "wound up" Mangum was to be paid the sum of $250 and then the two would "split the profits"; that there were no profits to divide; that when she needed to buy some supplies she wrote drafts on Mangum and that he paid them; and that she got as much as $300 from him by his paying her drafts.

The appellant contends that the above testimony is insufficient to support the court's finding that a partnership existed between him and Mrs. Lilliard. He asserts that at most the arrangement between them

falls within the rule announced in Strawn Nat. Bank v. Marchbanks, Tex.Civ.App., 74 S.W.2d 447, 450, writ refused, to the effect that a person engaged in business, who looks to interest in profits as a fund affording compensation for services rather than as property to which he has a right by reason of being a part owner of the principal, is not a "partner". We recognize the rule thus announced as being a correct one, but we think it has no application to the facts of the instant case. In the former case Marchbanks agreed to take care of cattle purchased by another under an agreement that the title to the cattle should remain in the purchaser and that Marchbanks should get one-half of the proceeds to be realized when the cattle were sold. In that case it was held that Marchbanks was an employee and not a partner and hence the purchaser was not liable for the debt incurred by Marchbanks in buying feed for the cattle. In that same case we think the true criterion for determining the status of parties in similar situations is announced in the following language: "If Marchbanks had a property right in profits by virtue of his being a part owner of the principal, he was a partner, but, if he was not a part owner of the principal, and his only right in the profits was to look to them for compensation, he was not a partner."

A very terse and accurate interpretation of this same rule may be found in Buzard v. First Nat. Bank of Greenville, Texas, 67 Tex. 83, 2 S.W. 54, 56, 60 Am.Rep. 7, as follows: "It is held in numerous cases that one who is to receive a part of the profits of a business as a compensation for his services is a partner; but that, if he is to receive a sum of money equal to a part of the profits, he is not."

Another very clear and concise statement of the rule applicable to the facts of the instant case will be found in Goode v. McCartney, 10 Tex. 193, 195, wherein it is said: "And it is said, if one person advances funds, and another furnishes his personal services or skill in carrying on the business and is to share in the profits, it amounts to a partnership. It would be a valid partnership, notwithstanding the whole capital was, in the first instance, advanced by one partner, if the other contributed his time and skill to the business, and although his proportion of gain and loss was to be very unequal. It is sufficient that his interest in the profits be not intended as a mere substitute for a commission, or in lieu of brokerage, and that he be received into the association as a merchant, and not an agent. (3 Kent, Com. Sec. 43.) But, to constitute a partnership, there must be a community of profits, or a specific interest in the profits, as profits, in contradistinction to a stipulated portion of the profits, as a compensation for services; and this, in this class of cases, is a test of partnership."

In other words, the true test of a partnership based upon an agreement to divide the profits of the business is whether or not there is a joint ownership in the profits as such or whether the profits are used merely as a measure to determine the amount of compensation due one of the parties. If there is a real ownership in the profits as such, the parties are partners, but if the division of the profits is merely used as a guide to determine the compensation due one of the parties, there is no partnership. Storey on Partnership, para. 33, et seq.; Kelley Island Lime & Transport Co. v. Masterson, 100 Tex. 38, 93 S.W. 427; Goode v. McCartney, supra; Ball v. Britton, 58 Tex. 57.

Under the above authorities we think the evidence in this case was sufficient to support the finding of the court that a partnership existed between the appellant and Mrs. Lilliard, and, in this connection, we think it is immaterial that the business yielded no profits and that in consequence Mangum shared in none. Freeman v. Huttig Sash & Door Co. et al., 105 Tex. 560, 153 S.W. 122, Ann.Cas.1916E, 446. By Mrs. Lilliard's testimony above it may be reasonably inferred that there existed between her and the appellant a community of interests, a common enterprize to be operated for the benefit of both upon the stipulation that each owned an interest and would share as a principal in its profits as such. We therefore think there was no error in the judgment of the trial court holding the appellant liable as a partner for the rent accruing after the formation of the alleged partnership.

The judgment is affirmed.